■ WILLIAM PAPPAS et al., Petitioners, v. NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents.— In a proceeding pursuant to section 298 of the Executive Law to review an order of the State Human Rights Appeal Board, dated February 25, 1974, which, upon a divided vote, affirmed a decision and order of the State Division of Human Rights, dated February 7, 1973, inter alia finding petitioners guilty of discriminating in the sale of a housing accommodation on the basis of race and color. Petition granted and orders of the appeal board and the division annulled, without costs. The complainant, Mrs. Dingle, who is black, charged petitioners with unlawfully discriminating against her (and her husband) by denying her equal terms, conditions and privileges of housing accommodations. On February 29, 1972, Mr. Dingle made a $300 deposit on a house and plot in a small development being constructed by the petitioner corporation. The individual petitioner, William Pappas, the corporation's president, gave Mr. Dingle a binder receipt, which required the contract of sale to be executed by March 7, 1972, with the deposit otherwise to be refunded, and told him to have his attorney call petitioners' attorney to arrange a date for the contract signing. Thereafter, according to the Dingles, their attorney had no success in trying to contact petitioners' attorney and, on March 6, 1972, petitioner Pappas flatly told them that his partner did not want to sell them the house because of their color, that he, himself, had been threatened with violence if he were to go through with the deal, and that, if the complainant insisted on purchasing the house she would have to sign a paper agreeing to be the last one to move into the development. Petitioner Pappas denied that the complaint's attorney had attempted to contact his attorney and claimed that he had merely told the complainant (on March 6) that it customarily took him about six months to complete these homes and deliver title, which information seemed to upset her. Mrs. Dingle filed her complaint with the Division of Human Rights on March 7, 1972. A week later, a conference was held at which petitioner Pappas denied the charge of discrimination and stated his willingness to sell the complainant the house; and the Dingles expressed a willingness to buy it. Mrs. Dingle was then directed to have her attorney contact Pappas' attorney within the week to arrange for the contract signing and the complaint was dismissed on a finding of no probable cause. Two or three days after the division conference, Mr. Dingle returned to the development and spoke with petitioner Pappas. According to Mr. Dingle, Pappas then offered him $500 not to purchase the house and he

initially considered settling everything, including a proposed slander suit against Pappas seeking $1,500 in damages, plus the return of his deposit. However, he then allegedly changed his mind. Pappas, on the other hand, claimed that it was Mr. Dingle who offered to drop everything for $1,500 and the return of his deposit in an apparent extortion attempt and that he, Pappas subsequently refused to go along with this. He further claimed that he waited a week beyond the division's deadline for the respective attorneys to get together on the contract signing and, still not having heard from Mrs. Dingle's attorney, sold the parcel to another couple. The house constructed upon the parcel was still not completed at the time of the formal hearing before the division in October, 1972. The hearing was occasioned by a remand for further investigation upon Mrs. Dingle's appeal to the appeal board from the dismissal of her complaint. In our view, the formal finding of discrimination on petitioners' part is simply not supported by sufficient evidence on the record considered as a whole (Executive Law, § 298). The issue of whether any discrimination occurred on March 6, 1972, prior to the filing of the complaint, cannot be divorced from subsequent events in this case, as the division seems to have done. The alleged willingness of both sides, especially the Dingles, to proceed to contract, as expressed upon the March 13 conference, coupled with the contradictory testimony of Mr. Dingle as to whether he almost immediately thereafter attempted to withdraw from the deal at a profit and the paucity of proof on the alleged inability of Mrs. Dingle's attorney to ever contact petitioners' attorney, by telephone or otherwise, even after the conference, cannot be ignored. Considering the entire record then, the finding of discrimination is not sufficiently supported and must be annulled. We also note that the division's award of $1,500 in compensatory damages was excessive upon this record and largely unsupported. An award of $250 for anguish and humiliation would suffice were we otherwise to uphold the division's findings. Gulotta, P. J., Martuscello and Latham, JJ., concur; Hopkins and Shapiro, JJ., dissent and vote to modify the order, with the following memorandum: Contrary to the majority view, we would confirm the finding of discrimination reached by the State Division of Human Rights and affirmed by the State Human Rights Appeal Board. Our function of review is sharply circumscribed by the statute. "The findings of fact on which such order is based shall be conclusive if supported by sufficient evidence on the record considered as a whole" (Executive Law, § 298). This standard is much the same as that prescribed in proceedings under article 78 of the CPLR to review administrative determinations generally (cf. *Matter of Pell* v. *Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck*, 34 N Y 2d 222, 230–232). As we read the record an issue of veracity was presented by the testimony. The division resolved that issue in favor of the complainant and that determination of fact may not be set aside by the reviewing court. "Where the evidence is conflicting, it is for the administrative board to pass upon the credibility of witnesses and to base its inferences on what it accepts as the truth" (*Matter of Avon Bar & Grill* v. *O'Connell*, 301 N. Y. 150, 153; see, also, *Matter of Glashow* v. *Allen*, 27 A D 2d 625, 626). Hence, the finding of discrimination should be confirmed. We are unable to find in the record, however, sufficient evidence to support the award of damages in the sum of $1,500 to the complainant. Although the complainant testified that she had expended $400 in medical expenses arising out of treatment for a nervous breakdown, there was no proof either of the treatment or of the payment. No medical bills were ever produced. Nor does there appear to be proof of the complainant's loss of wages in the sum of about $400, or for rent paid to her mother, or for the cost of outside meals. The claim of $25 for

the expense of typing, copying and mailing letters to public officials is not a proper item of damages. In consequence, we would modify the order by reducing the award of damages to the sum of $250 for the anguish and humiliation suffered by the complainant (*Matter of State Comm. for Human Rights* v. *Speer,* 29 N Y 2d 555, revg. 35 A D 2d 107, 112 on dissenting opn.).